In re OLD SUMMIT
MANUFACTURING,
LLC, Debtor.

William G. Schwab, Trustee for old
Summit Manufacturing, LLC,
Movant,

v.

SSG Capital Advisors,
L.P., Respondent.

No. 5–02–02811.

United States Bankruptcy Court,
M.D. Pennsylvania.

April 14, 2004.

Neal D. Colton, Cozen O'Connor, Philadelphia, PA, for Debtor.

## OPINION [1]

JOHN J. THOMAS, Bankruptcy Judge.

William G. Schwab, Trustee for the above-captioned Chapter 7 bankruptcy case has filed against SSG Capital Advisors, L.P., (hereinafter referred to as "SSG" or "Respondents"), in the first instance, a Motion to Disgorge fees in the approximate amount of $76,108.06 alleging that the acceptance of this amount as compensation and expenses was done so without prior approval by this Bankruptcy Court as required by the dictates of the United States Bankruptcy Code. The second matter is an Objection by the Trustee to the First and Final Application of SSG Capital Advisors, L.P. for Allowance of Final Compensation and Reimbursement of Expenses. The objections to the fee application again reiterate the allegations and demand in the Motion to Disgorge referencing the receipt of compensation of fees

1. Drafted with the assistance of Richard P. Rogers, Law Clerk.

and expenses without prior approval from the Bankruptcy Court.

The Trustee also alleges that SSG has a conflict of interest and therefore not a disinterested person as required by 11 U.S.C. § 327. Berwind Financial Group, L.P. ("Berwind") is alleged to be an investor in and creditor of the Debtor. SSG bought the "special situations practice" from Berwind sometime in late 2001. SSG, furthermore, is comprised in large part of former Berwind employees. As part of the buyout, Berwind made a loan commitment to SSG's general partner in the amount of $500,000.00. The Trustee further argues that, in contradiction to the explicit terms of a Court Order dated August 15, 2002 which established the procedure for compensation of professionals, the Respondent received various payments for fees and expenses. Specifically, these fees and expenses were paid without the benefit of the filing of a fee application as required by the August 15, 2002 Order. The Trustee asserts that the Respondent did not differentiate between the fees and expenses incurred on behalf of the Debtor, Old Summit Manufacturing, LLC, and that of Summit Alabama, LLC, a related entity also in bankruptcy. To the extent that the Debtor, Old Summit Manufacturing, LLC, transferred funds to the benefit of Summit Alabama, these were not authorized post-petition transfers and, therefore, are avoidable pursuant to 11 U.S.C. § 549. Lastly, the Trustee asserts that the benefit to the estate of the services provided by the Respondent was insignificant and the Court should therefore order some portion of the professional fees to be disgorged.

On its behalf, the Respondent did not file a written response to the Objection to the fee application but did object to the Trustee's Motion to Disgorge in writing. The Respondent argues that a review of its retention agreement with the Debtor, in addition to the carve-out agreement providing for payments of its fees with the major lender's collateral, and several cash collateral orders entered by this Court, will reflect that the method used to receive compensation was proper and met all of the statutory basis for retention orders as contemplated by 11 U.S.C. §§ 327, 328.

Before hearing testimony, the Court had a colloquy with counsel for the Trustee concerning the extent of relief the Trustee sought to gain by the underlying Motion to Disgorge. Counsel for the Trustee indicated that the Motion to Disgorge addressed only those post-petition fees which were paid to SSG without using the proper procedural mechanism, i.e., a fee application to receive said award of compensation and expenses. The Court inquired that should there be an order of disgorgement of the interim fees resulting in reimbursement to the estate, would those same fees be paid back to SSG if the Court granted the final fee application in its totality. Counsel for the Trustee indicated that it would expect the Court to reduce the final fee application as a sanction for not following the proper procedures in making a request for fees.

The only witness for SSG was Scott Victor, a founder and managing director of SSG Capital Advisors, L.P. SSG was a professional thirteen member investment banking firm with offices in the Philadelphia and New York City areas. SSG was approved as the investment banker to the Debtor by Order of this Court dated July 18, 2002. (See SSG Exhibit No. 1.) Paragraph 2 of the Order reads that in accordance with §§ 327(a) and 328 of the Code, the Debtor was authorized to employ SSG as an investment banker upon the terms and conditions set forth in the application and the engagement letter attached to the application. Presented into evidence as SSG Exhibit No. 2 was the engagement

letter entered into between Summit Manufacturing, LLC, and subsidiaries, and SSG Capital Advisors, L.P., dated April 11, 2002. Subsection B titled "SSG's Fees" set forth the compensation package agreed to by SSG and the Debtor. It called for an initial fee of $35,000.00 due upon the signing of the engagement agreement and, thereafter, called for fees of $30,000.00 per month, payable in advance, beginning on May 1, 2002 and payable on the first day of each month during the term of the engagement agreement. This subsection further indicated that the initial fee and the monthly fees would be credited back one hundred percent against any one of three fees including a financing fee, advisory fee, or restructuring fee that would be allowed to SSG pursuant to sections 3 through 5 of subsection B of the agreement. Three post-petition fees for June, July and August of 2002, in addition to the initial fee in April of 2002 (the April fee was a pre-petition fee), were credited to the advisory fee earned by SSG. The advisory fee was paid at the closing of the sales transaction pursuant to the terms of the agreement.

Another negotiated part of this fee agreement was that SSG's monthly fees would be paid from the cash collateral of the senior lending bank group which held debt approximating $20 million securing substantially all of the Debtor's assets. Also, the success fee or advisory fee would be paid by a carve-out from the proceeds of the sale which otherwise ultimately would be applied to the secured, senior debt of the bank group. Absent the carve-outs for the professionals, all of the proceeds from the sales would have been paid only to the secured bank lending group. Mr. Victor testified that the payments as indicated in the retention agreement, which was attached to the application for retention and referenced in paragraph 2 of the Order permitting retention, were fur-

ther authorized by this Court pursuant to a series of cash collateral orders. These cash collateral orders were identified in SSG Exhibits Nos. 3 through 6. These orders were entered pursuant to an agreement between the Debtor and the senior, secured lending group with each exhibiting a cash budget with a line item representing the monthly payments to SSG as contemplated by the retention agreement. In each of the Exhibits, a paragraph provided for the service of the Order on the Office of the United States Trustee, the 20 largest unsecured creditors, and any statutory committees that were appointed.

Mr. Victor further testified that at no time was he employed by Summit Alabama because at the time of the retention agreement, Summit Alabama had ceased operations. Mr. Victor testified there was no relationship between Berwind and SSG in answer to the allegations that SSG was not disinterested. Four of the SSG managing partners were, at one time, employees of the investment bank of Berwind and that employment relationship was fully set forth in the retention application filed with the Court. Berwind and SSG have no financial interest in each other. Mr. Victor testified that, consistent with most of the bankruptcy cases SSG was involved, there was no provision to file interim fee applications in either the engagement agreement or the retention application. Furthermore, while SSG customarily does not file interim fee applications, it does as a routine matter file final fee applications.

On cross examination, Mr. Victor testified that he was not aware of a Court Order establishing the procedures for reimbursement of compensation and expenses. The Trustee requested the Court take judicial notice of document number 96 on the docket which was the Order establishing procedures for compensation and

reimbursement of expenses of professionals dated and filed August 15, 2002.

The other witness called by SSG was Attorney Neil Colton, counsel for the Debtor. His testimony echoed that of Mr. Victor. He not only confirmed the arrangements made by the primary lending group concerning the carve-out for payments of professionals but also supported Mr. Victor's testimony that the United States Trustee and the 20 largest unsecured creditors were made well aware by notice of the request for fees as presented in the engagement agreement. Of further note, his testimony clarified the importance of the role of SSG in this bankruptcy by performing in such a way to get the ultimate, best recovery in the case that could be obtained.

Neither party submitted written legal support for their positions taken in this litigation. Both Messrs. Victor and Colton testified that investment bankers were treated differently than other professionals vis á vis the requirement of the filing of fee applications prior to payment for compensation for fees and expenses. In fact, Mr. Victor commented that he did not know why investment bankers were treated differently than other professionals. The Trustee did not present any evidence to contradict this testimony.

 In summary, the Trustee would have me vacate the Order of this Court, dated July 18, 2002, which authorized the interim postpetition payments to SSG. The Trustee has failed to demonstrate that this Order was improvident. Nonetheless, interim fee allowances have historically been subject to adjustment at the time of the final fee application. The Trustee has failed to establish that the interim order should be adjusted for any reason. On the contrary, SSG through its application, testimony and supplemental submission has demonstrated its fees and expenses are reasonable in light of the factors identified in 11 U.S.C. § 330. Accordingly, the First and Final Fee Application of SSG Capital Advisors, L.P. is allowed, in total, and the Trustee's Motion to Disgorge is denied.

· An Order will follow.